# Assertion of Executive Privilege With Respect To Clemency Decision

Executive privilege may properly be asserted in response to a congressional subpoena seeking documents and testimony concerning the deliberations in connection with President's decision to offer clemency to sixteen individuals.

Executive privilege may properly be asserted in response to a congressional subpoena seeking testimony by the Counsel to the President concerning the performance of official duties on the basis that the Counsel serves as an immediate adviser to the President and is therefore immune from compelled congressional testimony.

September 16, 1999

THE PRESIDENT

      THE WHITE HOUSE

My Dear Mr. President: You have requested my legal advice as to whether executive privilege may properly be asserted in response to several subpoenas issued by the Committee on Government Reform and Oversight of the House of Representatives to the White House, the Department of Justice, and certain White House and Department officials seeking documents and testimony concerning your decision to offer clemency to sixteen individuals.

## I.

The documents and testimony proposed to be subject to a claim of executive privilege consist of (1) advice and other deliberative communications to the President and (2) deliberative documents and communications generated within and between the Department of Justice and the White House in connection with the preparation of that advice. Documents falling into the former category consist of memoranda and other documents submitted to you by officials and components of the Department and offices within the White House concerning the clemency decision. The documents falling into the latter category include documents containing confidential advice, analysis, recommendations and statements of position that the Pardon Attorney generated in connection with the clemency review, or that other executive branch officials and employees submitted to the offices of the Pardon Attorney or the Deputy Attorney General in connection with that review. For the reasons set forth below, it is my legal judgment that executive privilege may properly be asserted with respect to the foregoing documents and with respect to testimony by Department and White House officials concerning the deliberations in connection with your clemency decision.

Advice to the President and other deliberative communications and materials fall within the scope of executive privilege. *See generally United States v. Nixon,*

1

418 U.S. 683, 705–13 (1974); *Nixon v. Administrator of General Servs.*, 433 U.S. 425, 446–55 (1977). The Supreme Court has recognized

> the necessity for protection of the public interest in candid, objective, and even blunt or harsh opinions in Presidential decision-making. A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately. These are the considerations justifying a presumptive privilege for Presidential communications. The privilege is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution.

*United States v. Nixon*, 418 U.S. at 708. It is thus well established that not only does executive privilege apply to confidential communications to the President, but also to "communications between high Government officials and those who advise and assist them in the performance of their manifold duties." *Id.* at 705.

The White House staff and the Department of Justice act as confidential advisors to the President as part of the clemency review process, and executive privilege has long been understood to protect confidential advice generated during that process. Under controlling case law, in order to justify a demand for information protected by executive privilege, a congressional committee is required to demonstrate that the information sought is "demonstrably critical to the responsible fulfillment of the Committee's functions." *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974) (en banc). And those functions must be in furtherance of legitimate legislative responsibilities of Congress. *See McGrain v. Daugherty*, 273 U.S. 135, 160 (1927) (Congress has oversight authority "to enable it efficiently to exercise a legislative function belonging to it under the Constitution").

The Committee's letter to the Department, dated September 10, 1999, which requested the designation of a witness for the Committee's hearing, indicated that the hearing is entitled "Clemency for the FALN: A Flawed Decision?" and that the Committee is "specifically interested in hearing about information germane to the process of the . . . grant of executive clemency" regarding the sixteen individuals. A compelling argument can be made, however, that Congress has no authority whatsoever to review a President's clemency decision. "Since Congress may only investigate into those areas in which it may potentially legislate or appropriate, it cannot inquire into matters which are within the exclusive province of one of the other branches of the Government." *Barenblatt v. United States*, 360 U.S. 109, 111–12 (1959). The granting of clemency pursuant to the pardon power is unquestionably an exclusive province of the executive branch. U.S. Const. art. II, § 2, cl. 1. *See United States v. Klein*, 80 U.S. (13 Wall.) 128, 147

(1871) ("To the executive alone is intrusted the power of pardon . . . ."); *see also Public Citizen v. Department of Justice*, 491 U.S. 440, 485 (1989) (Kennedy, J., concurring) (reaffirming that pardon power is "commit[ted] . . . to the exclusive control of the President").

In exercising his clemency power, the President may seek to obtain the views of various advisors as he deems appropriate. Historically, he has sought the advice of the Department of Justice. In response to previous inquiries, the Department has repeatedly emphasized the exclusivity of the President's pardon power. In a letter responding to a request for pardon papers by the Chairman of the House Committee on Claims in 1919, the Attorney General refused to provide Congress with the Attorney General's report, observing:

> [T]he President, in his action on pardon cases, is not subject to the control or supervision of anyone, nor is he accountable in any way to any branch of the government for his action, and to establish a precedent of submitting pardon papers to Congress, or to a Committee of Congress, does not seem to me to be a wise one.

Letter from A. Mitchell Palmer, Attorney General, to Hon. George W. Edmonds, Chairman, House Committee on Claims (Sept. 25, 1919). This position was reasserted by the Pardon Attorney in 1952 in response to an inquiry from Senator Styles Bridges concerning the publication of details of clemency cases. Noting that "the President's exercise of the pardoning power is not subject to statutory regulation or control," the Pardon Attorney explained that,

> [i]n the exercise of the pardoning power, the President is amenable only to the dictates of his own conscience, unhampered and uncontrolled by any person or branch of Government. In my judgment it would be a serious mistake and highly detrimental to the public interest to permit Congress, or any Branch thereof, to encroach upon any prerogative, right or duty of the President conferred upon him by the Constitution, or to assume that he is in the slightest respect answerable to it for his action in pardon matters.

Letter from Daniel Lyons, Pardon Attorney, to Hon. Styles Bridges, U.S. Senator (Jan. 10, 1952) (citation and internal quotation marks omitted). The executive branch has on occasion provided Congress with information relating to particular clemency decisions, but to our knowledge it has done so only voluntarily and without conceding congressional authority to compel disclosure.

Accordingly, it appears that Congress' oversight authority does not extend to the process employed in connection with a particular clemency decision, to the materials generated or the discussions that took place as part of that process, or to the advice or views the President received in connection with a clemency deci-

3

sion. In any event, even if the Committee has some oversight role, I do not believe its oversight needs would be viewed by the courts as outweighing the President's interest in the confidentiality of the deliberations relating to his exercise of this exclusive presidential prerogative. Conducting the balancing required by the case law, *see Senate Select Comm.*, 498 F.2d at 729–30; *United States v. Nixon*, 418 U.S. at 706–07, I do not believe that access to documents relating to or testimony about these deliberations would be held by the courts to be "demonstrably critical to the responsible fulfillment of the Committee's functions." *Senate Select Comm.*, 498 F.2d at 731. Indeed, this conclusion is confirmed by the fact that the Committee can satisfy any oversight need to investigate the impact of the clemency decision on law enforcement goals by obtaining information concerning the individuals offered clemency and any threat they might pose through non-privileged documents and testimony.

## II.

The Counsel to the President is one of several individuals subpoenaed to provide testimony to the Committee. Much, but not necessarily all, of what the Counsel might be asked to testify about at the Committee's hearing would presumably fall within the scope of information that would be covered by your assertion of executive privilege over deliberations leading up to your clemency decision. However, there is a separate legal basis that would support a claim of executive privilege for the entirety of the Counsel's testimony, thereby eliminating any need for her to appear at the hearing. Executive privilege is assertable in response to a congressional subpoena seeking testimony by the Counsel to the President concerning the performance of official duties on the basis that the Counsel serves as an immediate adviser to the President and is therefore immune from compelled congressional testimony.

It is the longstanding position of the executive branch that "the President and his immediate advisers are absolutely immune from testimonial compulsion by a Congressional committee." [1] This position is constitutionally based. As Assistant Attorney General Theodore Olson observed in 1982:

> The President is a separate branch of government. He may not compel congressmen to appear before him. As a matter of separation of powers, Congress may not compel him to appear before it. The President's close advisors are an extension of the President. [2]

---

[1] Memorandum from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re. Executive Privilege* at 5 (May 23, 1977)

[2] Memorandum from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 2 (July 29, 1982) (discussing subpoena for testimony of the Counsel to the President). *See also* Memorandum from Roger C. Cramton, Assistant Attorney General, Office of Legal Counsel, *Re· Availability of Executive Privilege Where*

Accordingly, "[n]ot only can the President invoke executive privilege to protect [his personal staff] from the necessity of answering questions posed by a congressional committee, but he can also direct them not even to appear before the committee." [3]

An often-quoted statement of this position is contained in a memorandum by then-Assistant Attorney General William Rehnquist:

> The President and his immediate advisers — that is, those who customarily meet with the President on a regular or frequent basis — should be deemed absolutely immune from testimonial compulsion by a congressional committee. They not only may not be examined with respect to their official duties, but they may not even be compelled to appear before a congressional committee.[4]

It is our understanding that the Counsel to the President falls within Assistant Attorney General Rehnquist's description of the type of Presidential advisers who are immune from testimonial compulsion.

Given the close working relationship that the President must have with his immediate advisors as he discharges his constitutionally assigned duties, I believe that a court would recognize that the immunity such advisers enjoy from testimonial compulsion by a congressional committee is absolute and may not be overborne by competing congressional interests. For, in many respects, a senior advisor to the President functions as the President's alter ego, assisting him on a daily basis in the formulation of executive policy and resolution of matters affecting the military, foreign affairs, and national security and other aspects of his discharge of his constitutional responsibilities. Subjecting a senior presidential advisor to the congressional subpoena power would be akin to requiring the President himself to appear before Congress on matters relating to the performance of his constitutionally assigned executive functions. Because such a result would, in my view, violate the constitutionally mandated separation of powers principles, it would seem to follow that compelling one of the President's immediate advisers

---

*Congressional Committee Seeks Testimony of Former White House Official on Advice Given President on Official Matters* at 6 (Dec. 21, 1972) (since "[a]n immediate assistant to the President may be said to serve as his alter ego . . the same considerations that were persuasive to former President Truman [when he declined to comply with a congressional subpoena for his testimony] would apply to justify a refusal to appear by . . a former staff member"), Letter from Edward C Schmults, Deputy Attorney General at 2 (Apr. 19, 1983) ("[O]ur concern regarding your desire for the sworn testimony of [the Counsel to the President] is based upon important principles relative to the powers, duties and prerogatives of the Presidency. We share with previous Presidents and their advisers serious reservations regarding the implications for established constitutional doctrines arising from the separation of powers of a Congressional demand for the sworn testimony of close presidential advisers on the White House staff ").

[3] Memorandum from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re Dual-purpose Presidential Advisers*, Appendix at 7 (Aug 11, 1977)

[4] Memorandum from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re· Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* at 7 (Feb 5, 1971)

to testify on a matter of executive decision-making would also raise serious constitutional problems, no matter what the assertion of congressional need.

At a minimum, however, I believe that, even if a court were to conclude that the immunity the Counsel to the President enjoys from testimonial compulsion by a congressional committee is subject to a balancing test, you may properly instruct the Counsel that she need not appear in response to the present congressional subpoena. In my view, a court would, at a minimum find that the constitutional interests underlying the immunity outweigh Congress' interest, if any, in obtaining information relating to the particular process followed, or the advice and other communications the President received, in connection with the President's exercise of his exclusive constitutional authority to grant clemency.

In conclusion, it is my legal judgment that executive privilege may properly be asserted with respect to the entirety of the testimony of the Counsel of the President, based on the immunity that position has with respect to compelled congressional testimony.

JANET RENO
*Attorney General*

# OPINIONS

OF THE

# OFFICE OF LEGAL COUNSEL